_____

No. 95-3808

_____

C. G. McFarland, individually      *
and as parent and natural         *
guardian of T.W., a minor,        *
                                       *
         Plaintiff-Appellant,     *
                                         *   Appeal from the United States
    v.                               *   District Court for the
                                         *   District of Minnesota.
First Union Management, Inc.,    *
a foreign corporation,         *      [UNPUBLISHED]
                                       *
         Defendant-Appellee.      *

_____

Submitted:  July 11, 1996

Filed:  August 28, 1996

_____

Before FAGG, LAY, and HEANEY, Circuit Judges.

_____

PER CURIAM.


      C.G. McFarland filed suit on behalf of her minor son, T.W., against First Union Management, Inc., which operates the Crossroads Shopping Center Mall in St. Cloud, Minnesota.  T.W., an African-American male, alleges First Union discriminated against him in violation of 42 U.S.C. § 1981 and the Minnesota Human Rights Act, Minn. Stat. §§ 363.01-.20 (1994), by banning him from the mall's premises for a year because of his race following an incident of attempted theft by a caucasian juvenile, J.V., on March 16, 1994.  T.W. also alleges First Union's employees falsely imprisoned him at that time.  The district court, the Honorable James M. Rosenbaum, granted summary judgment to the defendant.  McFarland appeals. We affirm.

      On March 16, 1994, employees of Scheel's Sport Shop, located

in the mall, requested First Union's security officials to investigate a suspect, J.V., for shoplifting. J.V. was observed peeling the sticker off a low-priced cap and putting it onto a regular-priced cap. He then went to the cashier to pay for the cap he had taken. Host Dep. at 20-21. T.W., who had come to the mall with J.V., waited for J.V. outside the store. T.W. inquired of an official what J.V. had done. The official asked if he was with J.V. and, when T.W. said yes, the official told T.W. to come with him. The two young men were questioned by the security officials. Based upon the investigation, First Union requested the young men to sign documents banning them from the mall. T.W. was banned for one year due to the alleged theft by swindle. J.V. was banned for the same reason for a period of eighteen months.

There is no direct evidence of intentional discrimination in this case. Furthermore, assuming T.W. has produced evidence to establish a prima facie case of racial discrimination, we find the defendant has produced a legitimate, nondiscriminatory reason for banning T.W. from the mall, i.e., its reasonable belief as a matter of law that T.W. was guilty of theft. As the district court found, the evidence on the record is not disputed that J.V. told the security officers as follows:

> I told the security guard about [T.W.] having scissors with him that he was using to remove tags at the mall and that he had been bragging about stealing stuff that day, including a pair of Reeboks. [T.W.] denied that he was using the scissors to steal things, but I knew that was not true.

J.V. Aff. at ¶ 11. On the basis of J.V's statement and the fact that T.W. was found in possession of scissors, the defendant urges that the reason for banning T.W. from the mall was based upon a non-discriminatory reason. Although T.W.'s deposition states that he did not steal anything from the store, that he told security officials he did not take anything, and that he heard J.V. tell the

security officers that neither T.W. nor he had ever stolen any property, the fact remains that J.V.'s affidavit in regards to what he told the security guards about T.W. is not disputed on the summary judgment record. As the district court points out, T.W.'s caucasian companion, J.V., was banned for a longer period of time than T.W. and there is no evidence the defendant rescinded the ban against J.V. or knowingly allowed J.V. to violate the ban. We further find no evidence that the defendant's reasonable belief in T.W.'s guilt was pretext for racial discrimination. T.W. acknowledged in his deposition that he had not previously been harassed by the security officials and that he initiated contact with the officials in this case. We therefore affirm the district court's grant of summary judgment on the § 1981 claim.[1]

Minnesota Human Rights Act

The Minnesota Human Rights Act requires plaintiffs claiming discrimination "to present proof of discriminatory motive" in the same manner as plaintiffs under federal anti-discrimination laws. E.g., Sigurdson v. Isanti County, 386 N.W.2d 715, 720 (Minn. 1986). Thus, we affirm the grant of summary judgment to the defendant on T.W.'s state discrimination claim for the reasons given above.

False Imprisonment

Minn. Stat. § 629.366 provides that a person may be detained

---

[1]The record contains various allegations that the security officials made an unspecified racial slur against T.W.; that security officials often harassed young people on the basis of their race, clothing, and hairstyles; that the security officials entered a store without an invitation from that store to accuse an African-American woman of shoplifting; and that the defendant banned a disproportionate number of African-Americans compared to Minnesota's population at large. We have carefully reviewed the overall record and find that this evidence is either too generalized or otherwise inadmissible to support an inference of intentional racial discrimination in this case.

by a "merchant or merchant's employee" for up to one hour "if the merchant or employee has reasonable cause to believe . . . that the person has taken, or is taking, an article of value without paying for it, from the possession of the merchant in the merchant's place of business[.]" Minn. Stat. § 629.366, subd. 1(a)(1), (c).

The district court found it undisputed, based upon T.W.'s deposition, that he was detained in the security room for forty-five minutes and overall for no more than one hour. Thus, the court held the defendant was entitled to immunity against T.W.'s false imprisonment claim under the Minnesota statute. We agree.

For the reasons stated, the grant of summary judgment to the defendant is AFFIRMED.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.